We have a missing attorney. Bill has never checked in. Is that right? Oh, he was checked in. Well, we'll start without him. Oh, there he is. It's the late Mr. Beale. That's the Commissioner of Internal Affairs. All right. You are? Good morning, Your Honor. I'm David Kirsch on behalf of the appellants in this case. I'd like to reserve three minutes for rebuttal. I'm going to yield five minutes to counsel for amici. I'll keep track of the time. All right. Best I can. This case is a statutory construction case involving Section 62A2A of the Internal Revenue Code. Counsel, I don't mean to be rude and interrupt you, but aren't you asking us to set aside an act of Congress? No, Your Honor. No, sir. This is an act passed by Congress in which they ask that this amount of money that you receive become part of your tax burden and you pay it. And if you're asking us to nullify that, aren't we nullifying an act of Congress? I'm not asking you to nullify it. I'm asking you to interpret it in a manner that covers these reimbursed legal fees. Well, aren't you saying that you shouldn't pay the taxes? Who shouldn't pay that? No. The taxes get paid on this money. They get paid by the attorney who gets the legal fees. They shouldn't also be paid on the same money by the taxpayer plaintiff who gets the recovery. Were you the attorney for this in this case, the original attorney? I was, Your Honor. Okay. Can you think of a fact situation where you could avoid paying this tax? Because here what you had was a verdict by a jury. The parties then decided to settle the case, and they settled for the same amount. And what they did was they set aside this amount of money that was to be paid for an attorney's fee. They settled for a substantially lesser amount and other claims. Yes, but they paid the other claim, and then this money was set aside to pay the attorney's fee. That's correct. And then the party who paid it made a note of that or filled out a form that indicated that money went to the attorney for the winning party, and that he had to now pay a tax on that money. The attorney? Yes, sir. Well, not the attorney, but the party who won the case or settled the case. Okay. And the whole purpose of the act as I see it, and please correct me if I'm reading it incorrectly, was that Congress wanted to make sure that people in the upper income bracket were paying their fair share of taxes. So if you're asking us to notify this or to in any way turn this around, we're saying that the Congress was wrong. Now I understand your question. No, I'm not asking you to set aside the alternative minimum tax provision. What I'm asking is that the employee reimbursement provision be interpreted in a manner that will cover the employer's payment of the legal fees involved here as a reimbursement. And for that proposition, we turn to the language of Section 62A2A, which contains two basic requirements. One, that the reimbursement must be or the expense must be incurred in connection with the performance of services as an employee. And the other, that the expense is reimbursed pursuant to a reimbursement or other expense allowance arrangement. That's all the statute requires to fit in. Well, there's two other requirements, substantiation and excess payments, but this is the focus of the case. Settled the case. Couldn't they have worked that out? In other words, the employee gets the money that's due him, and part of the settlement is that they would pay all legal fees and costs. That's what happened. That's exactly what happened in this case. Mr. Beal got $799,000, and the employer cut a check for $401,000 to the attorneys. That's exactly what happened. Yeah, but that was under this act. It appears that he's paying that to the employee to pay his lawyer. He's doing that. Unless you have an agreement that specifically spells it out. Well, the settlement agreement does specifically spell it out. It spells out that $799 goes to Beal, $401 goes to the attorneys. Right, but didn't spell out that they were going to pay the attorneys' fees. They paid that as part of a total settlement, but they divided the money up by giving part to the lawyer and part to the employee. Well, Your Honor, I understand that. But we have to come back in statutory construction to the language of the statute. And if it fits in the statute, then we ought to be covered by it. And the question here is, does this fit in the statute? The payment was incurred in connection with. Oh, I understand that. Because it sprang from the prior employment relationship. Now, I think that on its just the plain language, the face of the statute includes these attorneys' fees or this litigation as in connection with employment. And we think the tax court erred in two respects. First, it limited this coverage to current employees only. And the second is it required that the employer benefit. With respect to the former employees or current employees only question, that is different than the tax court has previously ruled. In the Alexander case, the tax court said that the limitation of analyzing the exact same language in subsection 62A1. Ours is 62A2A, but the exact same clause incurs in 62A1. It said the limitation of section 62A1 makes no distinction between present and former employees if the expense originator in the trade or business of being an employee. On appeal to the First Circuit, the government in its brief made that exact same argument verbatim. They said the limitation in section 62A1 makes no distinction between present and former employees if the expense originator in the trade or business of being an employee. And they went on. In short, because the lawsuit against Young was directly connected with or approximately resulted from his employment at Young, the litigation expenses are employee business expenses within the meaning of 62A1. That's the definition of in connection with the performance of services as an employee. So the tax court has previously ruled these are in connection with. The government has previously argued these are in connection with. But in this case, they take a diametrically opposed position and say, no, they're not, because there is a distinction between current and former employees. And we don't think they should be able to do that. With respect to. Even if they can, you say it's wrong. You say that argument doesn't carry the day. That's correct. It doesn't have to be. You don't. You can take the benefit of the 62A even if you're a former employee. That is correct. And apparently there have been cases to that effect. Well, I think Alexander basically says that. And the other thing was these services don't have to be for the benefit of the employer as long as they are in connection with employment. And the employment is the business of being an employee. I was just going to get to the employer benefit question. OK. But please go ahead. The tax court has grafted on, has said that in order to be in connection with the performance of services as an employee, the expense must benefit the employer. Now, that language doesn't appear anywhere in the statutes or regulations for benefit of the employer. That's correct. It appears nowhere other than the tax court's opinion. And this kind of a rule can pose a serious interference with sound business judgment. The judgment that Congress has allocated to the employer or the business, not to the IRS. And this question can rise in any number of cases involving reimbursed expenses. You know, assume that arguably taking a client or a customer out for a meal is for the employer's benefit. Wouldn't that benefit be satisfied by a Big Mac and fries? Is the increment between the Big Mac and fries and dinner at the Carnelian Room something other than for the employer's benefit? I don't know the answer to that. But I don't think that's something the IRS should be delving into. The Congress has said if the employer reimburses the payment, it has made a conclusion that it's in connection with the employment whether or not it benefits. Also, that reimbursement here occurred when the check was cut pursuant to the agreement in paying the fees to the lawyer. That's what we're saying. Reimbursing, if you will, the employee its obligation to pay the attorney fees. Yes. And that, I'm jumping ahead here a little bit, that becomes the reimbursement, quote, plan, unquote, is that right? Yes. So you don't need a separate policy of the employer, I guess, or a separate contract? Plans do not need to be in writing. They need to be expressed. But we think that the context of the circumstances here creates an express agreement. It's pretty obvious what happened. They settled it and they paid the $400,000 to the attorneys. That's about as express as you can get. I want to come back to one point on employer benefit and then come to the arrangement, the plan or arrangement again. If there is an employer benefit requirement, this employer did benefit. The tax court said that they did nothing more than the scope of objectives any defendant expects to achieve by settlement, but that's besides the point. There's nothing in this statute, in the language of the statute, that says you have to have some additional benefit over and above what you expect to get by settlement. It was in their benefit to settle. They did settle. So if that is required, it is satisfied in this case. With respect to the plan question or arrangement, the tax court referred to Webster's Dictionary and took what it called the primary definition, which I looked it up. It happens to be the one marked number one under a string of definitions. But if you read further down, settlement also or arrangement also means a settlement or adjustment, especially of a dispute or claim, a mutual agreement or understanding. In Random House Dictionary, it's a final settlement or adjustment by agreement. And in the American Heritage Dictionary, it's an agreement, settlement or disposition. The government has admitted in its brief in this court that the payment of the attorney's fees was a negotiated term of the settlement of the claim of wrongful termination. That, by definition, is an agreement. There was an arrangement between the employee and the employer. Yes. Now, we've demonstrated, I think, that this statute, Section 62A2A, can be interpreted to cover the reimbursement involved in this case. And it should be interpreted that way for several reasons. One is there should be a policy to encourage settlements. Employment cases are notoriously difficult to settle. The tax purpose here is to encourage settlement of these kinds of cases? Not the tax purpose, but the underlying purpose of the ---- You lost me on this argument, but go ahead. I'll try to make it clear, Your Honor. As lawyers, we're settlers. We're not litigators. We settle more cases than we litigate. If a statute can be interpreted in a way that fosters settlement as opposed to a way that impedes settlement or dissuades settlement, it should be interpreted in that way. Could he, in this case, set out the amount of the attorney's fee would be paid by the employer, that he would take care of that, whatever the settlements he would make with the employee was one thing, but he was going to take care of the legal fees and costs, whatever that might be, that would be submitted then. And then he would pay it, period. He wouldn't have to report that to the IRS or anybody else, just keep that as a regular part of his business. Oh, no. Well, I'm not sure I can differentiate that factual situation. Suppose, for example, he had an accident instead of an employment situation, and they settled it. And part of the settlement was that you pay me for whatever I suffer as a result of the accident, and whatever my attorney's fees are or whatever the amount is or whatever the cost, you're going to take care of that. We don't come to an amount. That he negotiates with the lawyer himself. Would that still come under? Would that still fit your argument? I'm not sure that would be a reimbursement as opposed to a negotiated direct payment, and possibly if that had been the negotiation, we might not be here. I don't know the answer to that, but I think that's a different question. You're down to seven minutes. Yes, I'm going to yield to Amici right now. Thank you. May it please the Court, my name is Stephen Cohen, and I'm a peer on behalf of the Amici, two former commissioners of internal revenue, and a former assistant secretary of the Treasury for tax policy. Judge Weiner, I want to address your concern about nullification. And it's our position that if there's any nullification going on here, it's on the part of the position of the Internal Revenue Service. And I would urge the Court to focus on the precise words of Section 62A1 and Section 62A2A. What's important here is the critical phrase, performance of services as an employee appears twice, not once, but twice in Section 62A. It appears in 62A2, which is the focus of this case. But virtually identical words appear in Section 62A1. Now, those words were construed by the First Circuit in Alexander. And they were construed in a way that is the opposite of the way the IRS argues they should be construed in this case. And presumably, when Congress uses the same words twice in the same subsection, 62A, it wants them to mean the same thing. And I'd like to just give you a cite quickly. 72 Fed Third 945 is the cite to the portion of Alexander that discusses this point. Now, if you focus on the words of the statute, the other requirements of the statute, there's a requirement of reimbursement, which occurred in this case, and there's the requirement of an arrangement. And both requirements are met on the facts of this case. I also want to mention briefly the purpose of limiting the deduction of unreimbursed employee business expenses. You're not going to argue the end connection with him? Well, in Alexander, Your Honor, the First Circuit said the expenses of a former employee in employment litigation And let me get the exact language here. The Alexander court said it directly results from the taxpayer's employment. It seems to me if the expenses directly result, they must be in connection with. I would like to know why something such as expenses in Alexander can directly result from the employment, but not be in connection with the employment, and yet that's the position of the IRS in this case. Let me tell you what my problem is with your position. It seems to me that you're taking, you're using words to abuse the congressional purpose in enacting these statutes. You go back and you look at the Senate report and you look at the House report. You're talking about expenses for his employer on behalf of the employer, reimbursement for business expenditures incurred on the employer's behalf and for the employer's benefit. It seems to me what they were getting at is you've got an employee. The employee is out there spending money on your behalf. You reimburse the guy. You're not going to get taxed on that. It seems to me as simple as that's what Congress had in mind, and all of a sudden we're really far afield trading on dictionary definitions of words to accomplish a purpose that I doubt for a second that Congress would have said, what? We're not going to do that. I mean the ordinary tax approach to this would be this amount of money would be includable in gross, right? Your Honor, I think there are answers. I'm a bit concerned because attorney for the appellant asked me to leave three minutes for him. Answer my question. Okay, Your Honor. That's the problem I'm having here. And I understand that. I understand that problem. And it seems that you figured out another way to use words to get to a purpose that Congress would have never, ever embraced. I think the truth is that Congress did not anticipate this problem. And so the issue for you is whether applying Section 62A2 in these circumstances is consistent with the purpose, the language. You're asking us to do something that Congress never even thought of, because somebody has figured out a way to use these words to get to another purpose. I don't think so. If you look at the references in the legislative history to employer benefit, Congress's concern was with what they called non-accountable plans, where there is no substantiation and where the employee is permitted to retain amounts designated as reimbursements. That's clearly the purpose. They never had on their mind for a second that this would become something that would be possible as a result of that language. I don't think they anticipated one way or the other what could result, Your Honor. They were working on something completely different. So you're asking us to transmogrify one of my favorite words, something intended for purpose A, and say, well, we get the benefit of this for purpose B, because look what all the dictionary definitions mean. And Snow says in connection with is broadly and all that kind of stuff, so we win too. But I keep going back to the point, is this what Congress intended? And my answer is no. Congress did not anticipate it, but in Bob Jones. Did Congress intend this? We don't know. Congress, if you look at the explanation of purpose, Congress said we want to limit deductions that have characteristics of voluntary personal consumption. Without this language that you're trying to fit this into, this is includable, isn't it? The inclusion is. You've got to report it. This is a separate issue. You're reporting it by using a section where you agree Congress never anticipated. No, but, Your Honor, the deduction issue is analytically separate from the inclusion issue. Things can be excludable under Section 119, but deductible under Section 162. You're trying to take us someplace that Congress didn't anticipate. I agree with that. But, again, in Bob Jones, the Supreme Court said the fact that Congress did not anticipate the situation does not prevent a court from applying a statute to cover it. And I believe the teaching of the Supreme Court is relevant here. Well, Scalia, notwithstanding, I don't believe in being trapped by words that take you to an unforeseen destination. There are 44 seconds left on the clock. I better sit down. Thank you. May it please the Court. I'm Kenneth Rosenberg, appearing for the Commissioner. I thought counsel was correct when he started out by saying that this is a case of statutory interpretation. And the statute at issue is Section 62A2A of the Internal Revenue Code. And the critical language that I think the Court needs to focus on is that in order to achieve the deduction that they're trying to get for these attorney's fees, the deduction has to be an expense paid or incurred by the taxpayer in connection with the performance by him of services as an employee under a reimbursement or other expense allowance arrangement with his employer. So there are two requirements there. The first is that it's in connection with the performance by the taxpayer of services as an employee, and the second is that there be a reimbursement or other expense allowance arrangement. And our position is that neither of those two requirements were met. You know, if we didn't have the existing case law or the position that apparently the service is taken in other situations, I would tend to agree with you. I mean, you look at this language. It says in connection with the performance by him of services as an employee. Here he incurred these services by what he alleged was a wrongful termination by the employer. That's what the services were. Attorney's fees were incurred for. Prosecute a wrongful termination claim. But you've got these other cases that seem to say, well, as long as it's in connection with the business of being an employee, it doesn't have to be apparently for the benefit of the employer. And this is something that the service just layered on to this meaning. What's your response to that? My response to that is that the other cases were not under this code section. Those cases were under either Section 162A of the Internal Revenue Code, which allows a deduction for ordinary and necessary expenses in connection with a trade or business, or under 62A1, which talks about ordinary and necessary expenses in connection with a trade or business. But the statutory language we're dealing with here is different. Okay. The language, in other words, we don't deny that these legal expenses were in connection with his employment, and that is the standard for the other tests that they were talking about. But for this particular paragraph, it's got to be in connection with the performance by him of services as an employee, and it's in those other words there that I think we bring in the other requirements that it has to be in the context of a current employment relationship by a current employee. It's a tighter requirement, and it comes under here. And I think that that's very clearly stated. Did you write the brief here? Yes. Well, you seem to have stated it. Maybe I just hear better than I read. I don't know. Fairly stated. Well, maybe it was the fellow who reviewed my brief who changed it that made it obfuscated. No, I'm just kidding. But thank you for that. Anyway. Is there any way they could have avoided this under the Act for the employee to pay this? No, I don't think so. No. Because, you see, the court may or may not be aware that there's a whole line of cases involving contingent attorney's fees that's kind of coming to a head right now in the courts of appeals, and there have been three cases. I'm asking you because we hear it all the time. Yeah, there have been three cases in the Ninth Circuit on the issue of contingent attorney's fees. And in those cases, the issue is when the taxpayer gets a taxable recovery and a percentage is paid to his attorney, does the taxpayer have to include that attorney's fee in his gross income at all? And this is simply taking a different approach to the same problem and trying to come out at the same result by using this deduction that's allowable in order to reach adjusted gross income, which the thorn in the saddle here is the alternative minimum tax because you don't get to deduct attorney's fees for purposes of the alternative minimum tax, and that's the whole reason why this whole line of cases has arisen. And Congress is aware of this problem, but Congress has chosen not to change it. The government is here in court in case after case saying this is the law that Congress made, and we recognize that sometimes it doesn't leave the taxpayer with very much money after he pays his taxes, after he supposedly won a lot of money from his employer for wrongful termination or something of that nature. But we're here time after time, and we may well be in the Supreme Court at some point soon on this issue. But to get back to the issue here, they're trying to achieve the same result by using this code section that allows a deduction, as they say, above the line. And as the court commented, there is a stated in the legislative history requirement that ties this in with the current employment relationship and a benefit to the employer, where the committee report said that the plan would have to reimburses expenditures incurred on the employer's behalf and for the employer's benefit. So I think I agree with what the court said about the whole intent of this particular provision is when you've got a current employer relationship, and the employee is out incurring expenses and paying out of his own pocket expenses that are part of the employer's business and give the employer a direct business benefit. And that's why we say in our brief that it doesn't satisfy that requirement. They say the benefit that the employer got out of paying this money was that they avoided future litigation or continuing this litigation with this taxpayer. But that wasn't the kind of benefit that was required because Congress was contemplating expenses that benefit the employer directly in conducting their business. And that's what the whole accountable plan regulations are about. And I'd also like to point out what this court said in the shotgun delivery case recently, which was also talking about an accountable plan requirement. It said that in order for the expenses to be deductible under this exact provision, quote, only permitted expenses that employees actually incur or are reasonably expected to incur in connection with their employment duties may be reimbursed. What case are you reading from that? That's shotgun delivery, which is 269 Fed Third 969. Okay. Then I'd like to go on to the second requirement in the statute, which is that there be a reimbursement or other expense allowance arrangement. Now, they're relying on their settlement agreement that settled this litigation as a reimbursement or other expense allowance arrangement. And I think, again, that that clearly falls outside what Congress was aiming at when it used these words, that a reimbursement arrangement is an arrangement that provides that the employer will reimburse the employee for expenses that the employee incurs in the conduct of his business and in the course of his performing his services as an employee. This is very far afield after the employee has long since ceased to work for the employer, and he's actually suing the employer for a wrongful termination. We'll see also in the tort actions the money is tax-free to the person who's been injured. Not necessarily in a tort, in all tort actions, Your Honor. Now since 1996 when they amended the statute, it has to be a physical injury case. So most of these employment recoveries are taxable now. You can be assured the lawyers couch the complaints in physical problems. Well, yeah, that can open a whole another can of worms. But I want to make one other point about why this settlement agreement was not the kind of reimbursement arrangement agreement that was required by the statute. Because in a filing that they filed in the state court in this litigation against the employer, they stated very clearly, and this is in the record, this filing, that the only reason for putting in a separate payment provision where the attorney's fees would be paid directly to the attorney was because the taxpayer had been advised by his advisors that that way he wouldn't have to pay tax on that portion of the recovery. So to call this an expense allowance arrangement that somehow reimbursing him for expenses he's incurred connected with his employment is I think really obviously doesn't fit in when they've said on the record themselves that the only reason they set it up that way was because he thought he wouldn't have to pay tax. In other words, if he wasn't bearing his tax consequences in mind, they never even would have put this separate payment to the lawyer in, and they wouldn't have anything that they could even claim represented this kind of arrangement. So that's really all I had to say about it, unless the Court has further questions. Thank you, counsel. We appreciate your presentation. It's very clear and to the point. We'll hear from the other side. What about the last point first? This couldn't possibly qualify because it was just a gimmicked up deal by lawyers for tax purposes. Your Honor, the only purpose, the only reason for Section 62A2A to exist is to his tax relief. It provides tax relief for both the employee, so he doesn't have to report the income at all. I mean, it's just not even on his tax return. It provides tax relief from the employer. The employer gets a deduction for the expense itself in either case. Either it's, you know, the expense or it's treated as wages if it's a non-accountable plan. But if it's an accountable plan under 62A2A, the employer, say, has payroll taxes. They don't have to pay those. Well, that's what they're talking about. And there's also withholding and all the rest. I mean, this thing follows through. But the other side admits that this is an area that this would be a result that Congress never even anticipated. Aren't we taking this into an area that Congress didn't think about? So isn't this using the language for a purpose that it shouldn't be used for? No. I would agree that it is a situation that Congress probably did not anticipate. But counsel made a very excellent point, and that is until 1996, these recoveries were tax-free. Why would Congress consider it if the recovery is tax-free? Who cares? Because now you don't – if the recovery is tax-free, the deduction doesn't matter. There is no deduction. It's only when Congress changed the recovery to be taxable that this became an issue. And, Judge Trott, you said you don't think Congress – you think Congress not only did not consider this problem, but they wouldn't rule – they wouldn't – if they did consider it, they wouldn't have included these expenses. Based on other aspects of the tax law, not some divining rod that I claim that I have. I understand. I'm not sure – I don't think that's correct. I think if Congress had considered this, they would say it's not fair to double-tax, to tax the employee, not give him a deduction, and tax the attorney. It double-tax everything that moves, Congress does. Well, only one tax. It's a big one, but it's only one. Except for dividends. And they looked at that. But what about shotgun, where they're talking about withholding and 62A2A, but they say in addition to the substantiation return, blah, blah, blah, that must have a business connection is only permitted expenses that employees actually incur or are reasonably expected to incur in connection with their employment duties may be reimbursed. Doesn't that sort of cut against your position? No, Your Honor, I don't think it does. I think it actually defines our position. I think that in today's climate, any employer has to think that if he terminates an employee wrongfully, he's going to get sued and incur legal fees. I think that's an expected cost of doing business. As a matter of fact, I think there may be a 1992 revenue ruling or a private ruling dealing with a different section of the code that actually refers to that as a cost of doing business and an employer benefit. Do you have anything else? No, Your Honor, thank you. As a wholly irrelevant point in the Snow case, the trot was my father. Snow was my wife's father. Snow lost that lawsuit in the lower court and told his law firm, I'm sick and tired of paying you fees for losing my cases. We're not taking this to the Supreme Court. The law firm said, yes, we are. We won't charge you anything. We think that the Court of Appeals was wrong. We're going to go to the Supreme Court. So they took it to the Supreme Court. And I never in my wildest thought that years later I'd be sitting on a bench dealing with in connection with and in the Snow case. Utterly irrelevant. Thank you. Both cases argued as ordered and submitted. We will be in recess until tomorrow morning. Thank you. Thank you. Thank you.
judges: Weiner , Thompson, Trott